UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61167-CIV-ALTMAN/Hunt

**MELVIN BARTOLOME SANTOS CAMACHO**,

    **Plaintiff**,

v.

**UNITED STATES OF AMERICA**,

    **Defendant**.

_____/

## ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Transfer Venue (the "Motion") [ECF No. 17]. The Plaintiff filed his Response in Opposition ("Response") on August 23, 2019 [ECF No. 32]. And the matter ripened on September 6, 2019, when the Defendant filed its Reply [ECF No. 35].[1] On October 4, 2019, the Court held a hearing, at which the parties presented their oral arguments. The Court has considered the Motion, the parties' other filings and arguments, and the governing law. For the reasons set out below, the Court hereby **GRANTS** the Defendant's Motion.

## BACKGROUND

The Defendant asks the Court to transfer this case to the United States District Court for the District of Puerto Rico under 28 U.S.C. § 1406(a) or, in the alternative, under 28 U.S.C. § 1404(a). *See* Mot. at 3–10. Section 1406 authorizes district courts "of a district in which is filed a case laying venue in the wrong division or district [to] dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.

---

[1] With the Court's permission the parties also submitted a set of supplemental briefs. *See* [ECF Nos. 41, 42, 43].

§ 1406(a). Section 1404, by contrast, provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Thus, "[u]nlike § 1406(a), § 1404(a) does not condition transfer on the initial forum's being 'wrong.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

The Plaintiff brought this negligence action against the Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. *See* Compl. [ECF No. 1] at 1. The FTCA has its own venue provision, 28 U.S.C. § 1402, which provides, in relevant part, as follows: "Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). The Complaint alleges that venue is proper in the Southern District of Florida because the Plaintiff resides here. *See* Compl. at 2.[2] The Plaintiff seeks damages arising from the alleged negligence of several physicians at the Department of Veterans Affairs ("VA") who treated him in Puerto Rico. *Id.* at 2–6.

**THE FACTS**

The Plaintiff owns a home in Puerto Rico, which he inherited from his mother. *See* First M. Santos Camacho Decl. [ECF No. 32-1] ¶ 6. The Plaintiff also "regularly" spends time in Puerto Rico to "visit his sons and receive some care at the VA Hospital in Puerto Rico." *Id.* ¶¶ 10–11.[3] The VA records the Defendant submitted suggest that the Plaintiff has received continuous medical

---

[2] On the other hand—and as relevant here—the Complaint does not suggest that venue is proper in this District because any relevant acts or omissions occurred here.
[3] In a later declaration, the Plaintiff clarified that he has only one son in Puerto Rico. *See* Second M. Santos Camacho Decl. [ECF No. 41-1] ¶ 4.

2

care in Puerto Rico since 2012. *See* L. Colon Decl. Ex. D [ECF No. 27]. And every allegedly negligent act or omission the Complaint describes occurred in Puerto Rico, not Florida.[4] *See* Compl. at 2–5. Specifically, the Plaintiff says that he "was diagnosed with a priapism that was caused by a combination of medications" prescribed by the Puerto Rico VA's doctors who, he contends, failed to warn him that those medications "could potentially put him at risk for priapism." *Id.* ¶ 9. The Complaint goes on to aver that, although a doctor at the Puerto Rico VA operated on him to relieve his priapism, this surgery actually caused him to suffer erectile dysfunction. *Id.* ¶¶ 10–11. According to the Complaint, on the same doctor's recommendation, the Plaintiff then "underwent surgery to implant an inflatable penile prosthesis to address his erectile dysfunction." *Id.* ¶¶ 11–12. Doctors at the Puerto Rico VA later "performed four additional invasive and severely painful surgeries to implant, replace, and repair penile prostheses over a period of three years." *Id.* ¶ 13. And, the Plaintiff insists, "[e]ach surgery was motivated by the doctors' knowing efforts to conceal the egregious medical errors committed by their colleagues." *Id.*

The Plaintiff claims that he has continuously resided in Florida since 2016. *See* First M. Santos Camacho Decl. ¶ 4. To support this contention, the Plaintiff avers that he currently leases an apartment in Pembroke Pines, Florida; that he maintains another address in Hollywood, Florida; that he possesses a Florida driver's license; and that he owns an account at a bank in Broward County, Florida. *Id.* ¶¶ 7–9. He also says that he receives most of his medical treatment at a VA

---

[4] In fact, the only event that, according to the Complaint, took place *outside* of Puerto Rico was a medical visit the Plaintiff attended with Dr. Richard Stack in Augusta, Georgia. *See* Compl. ¶¶ 14–15. Notably, the Complaint does not allege that Dr. Stack committed any negligent acts or omissions—and, even if he did, none of those acts or omissions would have occurred in Florida.

hospital in Miami—and that, despite his "regular" travels to Puerto Rico, he always intends to return to his Pembroke Pines "home." *See* First M. Santos Camacho Decl. ¶¶ 10–11.

In response, the Defendant points out that the lease the Plaintiff submitted as evidence of his Pembroke Pines "residence" is unsigned; that his Florida driver's license lists, not a residence, but a commercial address owned by another individual; and that the Plaintiff's Florida auto insurance policy lists only a Hollywood post office box—not a street address. *See* Reply [ECF No. 35] at 3–4; *see also* [ECF Nos. 35-1, 35-2, 35-3, 35-4].

## ANALYSIS

In its Motion, the Defendant, invoking § 1406(a), contends that the Plaintiff resides in Puerto Rico—which, of course, would render this District an improper venue under § 1402(b). Mot. at 4–6. The Plaintiff, for his part, vehemently disputes the Defendant's characterization of his domicile and, to that end, has filed a declaration, which, he says, establishes his Florida residence. *See* Resp. [ECF No. 32] at 4–7; *see also* First M. Santos Camacho Decl. [ECF No. 32-1].

### I.     28 U.S.C. § 1406(a)

"When a defendant challenges venue as improper, the plaintiff bears the burden of showing that the venue selected is proper." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1313 (S.D. Fla. 2018). "[T]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (internal quotation marks omitted). When the parties' affidavits do conflict, however, "the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." *Id.*

The evidence the parties shave submitted on the question of the Plaintiff's residence is, it goes without saying, in conflict—a conflict the Court would need a lengthy evidentiary hearing to resolve. Fortunately, the Court need not engage in this arduous fact-finding mission because, under the standard outlined in § 1404(a), this case plainly belongs in the District of Puerto Rico.

## II.     28 U.S.C. § 1404(a)

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted). Those factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks omitted). Most of these factors weigh heavily in favor of transfer here.

*First*, "the convenience of the witnesses" strongly favors Puerto Rico. It is undisputed that most of the necessary witnesses in this case are employees of the Puerto Rico VA hospital in which the Plaintiff was treated. *See* Resp. at 11 ("Most witnesses in this matter are employed by the Puerto Rico VA Hospital and consequently by the defendant."). The Defendant represented at the October 4th hearing that these medical professionals include most—or perhaps even all—of that

hospital's urology department. Since the Plaintiff has pointed to no similarly significant set of witnesses who reside in South Florida, *see id.*, the tremendous inconvenience that would result, not simply to the Puerto Rican doctors, but also (and perhaps more significantly) to the veterans of Puerto Rico—who will have to endure weeks of trial and deposition time without their physicians, *see generally* Reply at 6—militates strongly in favor of transfer.

The Defendant has conceded that the *second* factor is neutral, *see* Mot. at 9 n.5, and the Plaintiff has cited no relevant documents or sources of proof that could be more easily accessed in Florida than in Puerto Rico. Accordingly, the Court finds that this second factor weighs neither for nor against transfer.

The parties hotly contest the *third* factor. The Plaintiff says that litigation in Puerto Rico "will pose a substantial burden on [him] and his counsel, requiring them to travel to Puerto Rico numerous times for the duration of this action." Resp. at 9–10. But his argument is significantly belied by the text of his own declaration, in which he avers that he already "visit[s] Puerto Rico regularly." First M. Santos Camacho Decl. ¶ 11. By contrast, if the trial were conducted in Florida, the Defendant would have to send most of its Puerto Rican urology department to South Florida, for weeks at a time, on multiple occasions—once for deposition prep and testimony and a second time for trial prep and trial testimony. And the Court is unpersuaded by the Plaintiff's suggestion that, by virtue of its ubiquity and wealth—after all, the Government does have U.S. Attorney's Offices in both Puerto Rico and South Florida—the Defendant could never be prejudiced by having to represent itself in an otherwise-inconvenient district. *See* Resp. at 9–10. To the contrary, "[w]hat Plaintiff fails to remember when he incorrectly characterizes Defendant's budget as 'seemingly limitless' is that taxpayers fund the government's budget. Spending substantial taxpayer money on transporting and lodging witnesses for a trial in a district that has no connection

to the case makes no sense and is not in the public interest." Reply at 6. This factor therefore weighs slightly in favor of transfer.

The *fourth* factor likewise favors transfer. Although, at the October 4th hearing, the Plaintiff characterized his negligence claim as a "continuing tort" that extends to the care he received from the VA in South Florida, the Complaint reports no relevant Florida events *of any kind*. Indeed, the Complaint's only references to the State of Florida relate to the Plaintiff's alleged South Florida residence. *See* Compl. ¶¶ 2, 5. And, while the Complaint does mention a single post-injury visit the Plaintiff made to a doctor outside of Puerto Rico, that doctor apparently lives and works in Georgia, not Florida. *Id.* ¶ 14. This, of course, is in stark contrast to the Complaint's many detailed—and sordid—averments of (purportedly) negligent acts that occurred in Puerto Rico. *See* Compl. at 2–4. The "locus of operative facts," then, plainly resides in Puerto Rico.

The *fifth* factor—the availability of compulsory process—favors neither side.[5]

The *sixth* factor—the parties' "relative means"—plainly favors the Plaintiff. It is, after all, hard to dispute the self-evident proposition that the Government is wealthier than he is. *See* Resp. at 10. But the Plaintiff's "regular" travel to Puerto Rico—and the presence there of both his family and the only home he appears to own anywhere in the world—substantially lessens the burden he will endure if forced to litigate this case in Puerto Rico. This sixth factor, then, favors the Plaintiff—but only slightly.

The *seventh* factor—each forum's familiarity with the governing law—tilts heavily the other way. The parties agree that Puerto Rican negligence law will govern this case. *See* Mot. at

---

[5] The Court finds unavailing the Defendant's suggestion that, if the litigation were conducted in South Florida, it would be unable to compel relevant Puerto Rican witnesses to testify. *See* Mot. at 8. After all, as of this writing, there is in the record no evidence to support the Defendant's suspicion that any Puerto Rican witnesses might, at some point, refuse to testify.

9; Resp. at 11. This fact is significant for two reasons. First, there are salient substantive incongruities between the applicable negligence laws of Florida and Puerto Rico, *see* Reply at 8 n.6, and it is not unreasonable to suppose that Puerto Rican judges will be better able to grasp these sometimes-subtle differences—differences that, after all, flow naturally from the two jurisdictions' distinct histories and their understandably divergent treatments of the common law. *See, e.g.*, *Mateo v. Empire Gas Co.*, 841 F. Supp. 2d 574, 582–83 (D.P.R. 2012) ("[T]he First Circuit has consistently recognized that, when it comes to private law disputes, Puerto Rico is a civil-law jurisdiction, ruled by a Civil Code derived from Spain . . . ."); *Martinez De Jesus v. Puerto Rico Elec. Power Auth.*, 268 F. Supp. 2d 112, 114 (D.P.R. 2003) ("Puerto Rico is a civil law jurisdiction. Even after a century of influence from the United States' common law system, Puerto Rico's legal system remains one where the legislature is the only one with power to create the law."). Second, much of that body of negligence law will come from decisions of Puerto Rico's Commonwealth courts, including its Municipal Courts, its Superior Courts, its Court of Appeals, and its Supreme Court—most of which are, and always have been,[6] printed *in Spanish*. *See, e.g.*, *Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008).[7] While federal judges should be expected to become familiar with the laws of foreign jurisdictions—even jurisdictions that derive their legal codes from civil law pedigrees—federal judges in the District of Puerto Rico will be far

---

[6] *See* Luis Muñiz Argüelles, *Yelling, Not Telling: An Antitherapeutic Approach Promoting Conflict*, 24 SEATTLE U. L. REV. 237, 244 n.1 (2000).

[7] The Court recognizes that, in *Dalmau*, the First Circuit reversed the district court for relying on an untranslated decision of the Puerto Rico Supreme Court—something the United States District Court for the District of Puerto Rico may not do. *See* 48 U.S.C. § 864. But whether the District of Puerto Rico is better qualified to research the full body of Puerto Rican negligence law—much of it in Spanish—and whether, once it has found the right case, that court may then cite to an untranslated version of that case are two entirely different questions. And only the former is relevant here.

better able to sift through the substantial body of Puerto Rican law that may well form the legal backdrop of this case.

As for the *eighth* factor, while the Court is mindful of its obligation to tread lightly on the Plaintiff's chosen forum, *see Robinson*, 74 F.3d at 260, that choice is far less deserving of deference where, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff." *Greiser v. Drinkard*, No. 18-61126-CIV, 2018 WL 7287083-ALTONAGA, at *5 (S.D. Fla. Nov. 16, 2018).

The *ninth* factor—"trial efficiency and the interests of justice, based on the totality of the circumstances"—militates strongly in favor of transfer. Starting with trial efficiency: The Court sees little efficiency in forcing the vast majority of the liability witnesses in this case to leave their important posts in Puerto Rico—perhaps for weeks on end—to come and testify in South Florida. Indeed, the Court finds it far more efficient for those witnesses to testify (at depositions and elsewhere) at times convenient for them—in light of work hours, family obligations, and the like. And, for his part, the Plaintiff—who, by his own admission, "regularly" travels to Puerto Rico—should be required to testify (to the extent feasible) only when he is otherwise already in Puerto Rico, either visiting his home or his family. Likewise, it would be extremely inefficient for this Court—rather than Puerto Rico's judges—to undertake the tortuous process of culling and translating the Commonwealth's Spanish-language decisions. Finally, "the interests of justice" call (if they call anywhere) for a trial of the issues at the heart of this case in Puerto Rico. After all, the Puerto Rican community—and, in particular, the veterans of Puerto Rico—have a compelling interest in determining whether Puerto Rican doctors have been engaging in negligent conduct against Puerto Rican residents at a Puerto Rican hospital. The people of South Florida can have no similar stake in the outcome of this case.

******

The Court does not lightly override the Plaintiff's chosen forum. But, if the factors outlined in § 1404(a)—and enunciated in *Manuel*—are to mean anything, the Plaintiff's choice cannot be dispositive in every case. And the remaining *Manuel* factors "clearly outweigh[]," *Robinson*, 74 F.3d at 260, the Plaintiff's choice of forum here. Having thus carefully considered the pertinent factors, the Court finds it appropriate to transfer this case to the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a).

Accordingly, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Defendant's Motion to Transfer Venue [ECF No. 17] is **GRANTED**.
2. Pursuant to 28 U.S.C. § 1404(a), this case is hereby **TRANSFERRED** to the United States District Court for the District of Puerto Rico.
3. The Clerk shall **CLOSE** this case, all pending deadlines and hearings are **TERMINATED**, and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 19th day of November 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record