IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MELVIN BARTOLOME SANTOS CAMACHO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 19-2091 (JAG) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

In September 2012, Plaintiff Melvin Bartolomé Santos Camacho ("Plaintiff") was admitted at the San Juan Veteran's Administration Hospital ("VA Hospital") to address severe pain that he was experiencing from an erection that had lasted for several days. He was diagnosed with priapism, a prolonged erection not caused by sexual stimulation, occurring due to a combination of medications that had been previously prescribed to him. Plaintiff underwent surgery to correct this painful condition, but afterwards was found to be suffering from erectile dysfunction. Plaintiff then had another surgery to implant an inflatable penile prosthesis. This surgery failed to resolve the problem and over the next three years, VA doctors performed several additional surgeries to implant, replace, and repair the prosthesis, which were all unsuccessful. Plaintiff avers he suffered permanent physical damage, including pain, scarring, fibrosis, permanent disfigurement, sexual impotence, and claims damages therefrom.

Case 3:19-cv-02091-JAG   Document 123   Filed 09/12/22   Page 2 of 9

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 2
_____

On May 8, 2019, Plaintiff filed the present case alleging medical malpractice for treatment he received at the VA Hospital. Defendant United States of America ("Defendant") runs and/or manages the VA Hospital where Plaintiff was treated.

Before the Court now is Plaintiff's "Motion in Limine to Exclude Expert Testimony." (Docket No. 95). Plaintiff avers that the testimony and expert report of urologist Dr. Richard C. Davi ("Dr. Davi"), Defendant's expert witness, should be stricken from the record because the findings in his report were based solely on his experience and the report failed to cite to scholarly articles or literature in support of his conclusions. Plaintiff also argues that the expert report failed to mention the standard of care for the implantation of prostheses in a patient with similar conditions as in the present case. Plaintiff proffers that Dr. Davi's report is "highly questionable" and "will not assist the Court in understanding such a complicated medical matter." (Docket No. 95, p. 7).

Defendant opposed the motion in limine claiming that the unusual condition presented in this case is unlikely to have appeared in any medical journal or textbook, as Plaintiff's own expert failed to cite any medical literature where a patient dealt with a 5-day erection due to priapism. It further points to Dr. Davi's credentials as an Assistant Professor at the University of Miami, his extensive experience as an expert witness, and his past professional experience of performing between 60 and 70 penile implants as ample evidence of his qualifications to render an expert opinion in case at bar. (Docket No. 102).

## STANDARD

Federal Rule of Evidence 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience,

Case 3:19-cv-02091-JAG   Document 123   Filed 09/12/22   Page 3 of 9

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 3
_____

training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A review of the case law after Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 595, 113 S.Ct. 2786 (1993) shows that the rejection of expert testimony is the exception, rather than the rule. The Daubert case did not work a "sea change over federal evidence law," and ultimately, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996).

Case law post Daubert has further established that "Daubert does not require that a party proffering expert testimony convince the court that the expert's assessment of the situation is correct, but rather, [a]s long as an expert's scientific testimony rests upon good grounds it should be tested by the adversary process competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." United States v. Perocier, 269 F.R.D. 103, 107 (D.P.R. 2009) (citing Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

Case 3:19-cv-02091-JAG   Document 123   Filed 09/12/22   Page 4 of 9

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 4
_____

traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595. For this reason, the district court's analysis must be flexible, not rigid, and must ensure that expert testimony is relevant. Daubert, 509 U.S. at 592.

## LEGAL ANALYSIS

As an initial matter, the Court must determine whether the proffered expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" before permitting the testimony to be presented to the jury. Fed. R. Evid. 702. This gatekeeping function requires the trial court to determine, given the proffered expert's background, whether the scientific, technical, or other specialized knowledge he offers "will assist the trier better to understand a fact in issue." United States v. Alzanki, 54 F.3d 994, 1005 (1st Cir. 1995) (*quoting* United States v. Sepúlveda, 15 F.3d 1161, 1183 (1st Cir. 1993)).

The Court finds Dr. Davi is qualified to testify as an expert witness due to his knowledge, skill, and experience and training, as his *curriculum vitae* clearly evidences. Dr. Davi holds a medical degree from Georgetown University and was board certified in urology in 2002 and recertified in 2009. He is also an Assistant Professor at the University of Miami School of Medicine and other learning institutions and has ample experience in urology dating back to 1997. He has testified as an expert witness in many cases, for both plaintiffs and defendants. Thus, the Court finds his testimony will most definitely help the trier of fact better understand the relevant issues presented in this case. See Fed. R. Evid. 702.

Plaintiff argues that Dr. Davi has not performed a surgery involving the implant of a penile prosthesis in a number of years, and his patients normally have virgin tissue, not

Case 3:19-cv-02091-JAG   Document 123   Filed 09/12/22   Page 5 of 9

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 5
_____

severe fibrosis like Plaintiff.  The mere fact that Dr. Davi has not recently practiced the specific type of surgical procedure at issue or that he does not regularly deal with patients whose skin condition is comparable to this case does not mean that he is unqualified to give expert testimony, as Plaintiff would have the Court hold.  The First Circuit has held that, even a doctor who has no expertise in a particular field, is qualified to act as an expert. See Mitchell v. United States, 141 F.3d 8, 15 (1st Cir. 1998) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it") (*quoting* Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985)); see also Gaydar v. Sociedad Instituto Gineco-Quirúrgico y Planificación, 345 F.3d 15, 24-25 (1st Cir. 2003) (finding that the District Court abused its discretion in disqualifying an expert medical practitioner that was not a gynecologist or obstetrician in a malpractice action involving a pregnancy.).

Due to Dr. Davi's extensive background in the field of urology and his other credentials, the Court finds he is well qualified to render an opinion in case at bar, as his specialized knowledge will help the jury understand the evidence.

Plaintiff's main complaint seems to be with the second and third elements of Rule 702, that the testimony be based on sufficient facts or data and that the report be the product of reliable principles and methods.  Plaintiff proffers that Dr. Davi failed to include scholarly articles or literature to support the conclusions in his report, which were based only on his experience, and that the expert report fails to mention the standard of care for the implantation of prostheses in a patient like Plaintiff.

This district had the opportunity to examine this precise issue in the case of Brady v. Hosp. Hima-San Pablo Bayamón, No. 07-1085, 2010 WL 597421 (D.P.R. Feb. 16, 2010).

Much like in the case at bar, in Brady, defendant argued that plaintiffs' expert report was not supported by any medical journal, that it was inconclusive, and that it did not establish any breach of a standard of care. Defendant also complained that the expert's deposition testimony and report did not determine specific facts and the basis of his opinion. This Court found that "defendant's contention that plaintiffs' expert witness opinion does not establish a breach of standard of care because it is unsupported by medical journals is in itself unavailing since the minimum standard of acceptable care is almost always a matter of informed opinion, which depends on the expert witness' medical knowledge and training." Id. at *4. This Court held in Brady that these issues went to the weight and credibility of the expert, and not the admissibility of the information. Id.

In Casillas Sánchez v. Ryder Mem'l Hosp., 14 F. Supp.3d 22, 26, n.5 (D.P.R. 2014), this district further noted that the fact that an expert did not mention or produce "any single piece of specific medical literature in order to establish the alleged standard of care" was not significant because the Federal Rules of Evidence 705 and 703 did not require an expert to do so. This Court held instead that Rules 705 and 703 "place[ ] the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel's cross-examination." Id.; see also Carrelo v. Advanced Neuromodulation Sys., Inc., 777 F. Supp. 2d 315, 318-19 (D.P.R. 2011) (a challenge to the factual underpinnings of an expert opinion is a matter that affects the weight and credibility of the testimony and is a jury question); Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988) ("The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings

of the expert's opinion"); Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 58 (1st Cir. 1996) (questions such as "bias, and the weight of the evidence" are "matters for the factfinder.").

Turning to the present case, Dr. Davi stated in his deposition that his expert opinion was based on his experience. Experience is certainly a reliable principle in which to base an expert report on. See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 59 (1st Cir. 2010) (holding that "specialized knowledge," namely his medical training and experience in the field of obstetrics and gynecology and whether it would "assist the trier better to understand a fact in issue," were the appropriate field of inquiry for the district court when it performed its gatekeeping function).

For the sake of the argument, even if experience were not enough, a subsequent supplementation of the report shows Dr. Davi cited to eight (8) external resources in support thereof. This is sufficient to end this matter.

At this juncture, the Court finds this is sufficient to meet the requirements of Federal Rule of Evidence 702. Whether the materials cited and Dr. Davi's experience will ultimately be enough to sway a jury is a matter for Plaintiff to entertain in the cross-examination of Dr. Davi at trial and for the jury to decide as part of their fact-finding mission.

The above conclusion also applies to Plaintiff's argument that Dr. Davi has no recent experience implanting penile prostheses, that he rarely deals with patients with severe fibrosis and that he has not authored a scholarly article in a number of years. These issues all go to the weight of Dr. Davi's testimony and not its admissibility and are matters to be addressed by counsel at trial when Dr. Davi takes the stand.

Case 3:19-cv-02091-JAG   Document 123   Filed 09/12/22   Page 8 of 9

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 8
_____

Finally, as to the standard of care, the report in question clearly states that Plaintiff suffered from erectile dysfunction due to two episodes of priapism, the most severe lasting 4-5 days, and he was appropriately treated with a corporal T-shunt surgery which relieved the painful condition. (Docket No. 95, Exhibit 1). Dr. Davi adds that, "unfortunately, as is well known in Urology, priapism especially of long duration, very often causes erectile dysfunction due to tissue fibrosis and scarring throughout the penile anatomy". Id. He further mentioned that the medical team did everything possible to restore Plaintiff's erectile function and the treatment provided was well within the standard of care, but that the severe fibrotic tissue and the excessive scarring necessitated multiple surgeries to make room for the implant. Id. Each surgery created more scar tissue, and Plaintiff's available options were remaining impotent or undergoing as many attempts as possible to attempt to correct the problem. Id. Dr. Davi concluded that the urologists in the present case did an excellent job of attempting to resolve a condition with a bleak prognosis. Id. Considering these findings, the Court cannot find that the expert opinion fails to state the standard of care, as Plaintiff proffers.

In sum, the Court finds that Dr. Davi is qualified to render an expert opinion in the present case, and his testimony is relevant, reliable and will aid the trier of fact. The Court additionally finds that Dr. Davi's expert report, which is based on his analysis, training and experience, includes the minimum standard of care, and that the supplement to his report listed specific sources in support of his conclusions.

## CONCLUSION

For the above-mentioned reasons, it is recommended to the Court to DENY Plaintiff's "Motion in Limine to Exclude Expert Testimony." (Docket No. 95).

Melvin Bartolomé Santos Camacho v. United States of America
Report and Recommendation
Civil 19-2091 (JAG)
Page 9
_____

      IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. See 28 U.S.C. Sec. 636(b)(1); Fed. R. Civ. P. 72(b); and Puerto Rico Local Rule 72(d). Failure to file same within the specified time waives the right to appeal this order. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 12th day of September, 2022.

                                      S/CAMILLE L. VELEZ-RIVE
                                      CAMILLE L. VELEZ RIVE
                                      UNITED STATES MAGISTRATE JUDGE